UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

DEBORAH A. LISTER, et al., )
    Plaintiffs, )
)
v. ) C.A. No. 13-450-M
)
BANK OF AMERICA, N.A., et al., )
    Defendants. )
)

**MEMORANDUM AND ORDER**

JOHN J. McCONNELL, JR., United States District Judge.

Deborah A. Lister and Leon Blais ("Plaintiffs") filed a complaint alleging an invalid foreclosure of their home against Defendants Bank of America, Homeward Residential, Inc. ("Homeward"), Mortgage Electronic Registration Systems, Inc. ("MERS"), and OCWEN Loan Servicing, LLC ("OCWEN") (collectively, "Defendants"). (ECF No. 1.) Before the Court are Defendants' motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF Nos. 13, 32.)

On or about October 31, 2000, Deborah A. Lister purchased a parcel of property in Lincoln, Rhode Island and recorded her interest in the Town of Lincoln's Land Evidence Records. (ECF No. 1 at ¶ 23.)[1] In 2006, Ms. Lister decided to refinance and secured a new mortgage with Mortgage Lenders Network ("MLN"). (*Id.* at ¶ 25.)

---

[1] The facts are taken from the Plaintiffs' complaint and are assumed as true for the purposes of evaluating Defendants' motions to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Ms. Lister alleges that neither the note[2] nor the mortgage are executed, witnessed, or notarized, and she does not have any recollection of signing the mortgage. (*Id.* at ¶ 28.) Nevertheless, she began making payments to the address listed on a document entitled "First Payment Notice." (*Id.* at ¶ 31.) Subsequently, after MLN filed for bankruptcy in Delaware, Ms. Lister received notice to forward her mortgage payments to Bank of America, and she did so.[3] (*Id.* at ¶¶ 4, 33.)

In 2008, Ms. Lister "grew suspicious" about the handling of the note and mortgage, so she "slowed" her payments. (*Id.* at ¶ 34.) In November of 2008, Countrywide Home Loans ("Countrywide") contacted Ms. Lister and threatened to foreclose. (*Id.* at ¶ 35.) Shortly thereafter, Harmon Law Offices ("Harmon") contacted Ms. Lister, who informed her that it represented Countrywide and reiterated the threat to foreclose. (*Id.* at ¶ 36.) On November 5, 2008, Ms. Lister's counsel (who is also her husband), Leon Blais, demanded verification from Harmon under the Fair Debt Collection Practices Act[4] and requested an accounting of funds previously paid. (*Id.* at ¶ 37.) Almost two years later, on September 10, 2010, under continued threats of foreclosure, Mr. Blais again requested verification and an accounting. (*Id.* at ¶ 38.) Each request was ignored and Harmon pressed forward with foreclosure proceedings until

---

[2] The note has a total value of $307,000.00, payable to Mortgage Lenders Network. (ECF No. 1 at ¶ 29.)

[3] An examination of the Lincoln Town Hall Land Evidence Records shows that the original mortgage dated October 27, 2006 was recorded by MERS (listing MLN as the lender and MERS as nominee for MLN and MLN's successor and assigns (ECF No. 14-1 at 2)), and then assigned to BAC Loan Servicing on September 21, 2010. (ECF No. 1 at ¶ 46.) Bank of America claims assignment from BAC Loan Servicing as its "successor by merger." (*Id.*) There is a subsequent assignment from Bank of America to Homeward Residential on January 23, 2013. (*Id.*) The assignment from Bank of America to Homeward was signed by an individual claiming to hold power of attorney for Bank of America, but there is no recorded documentation of this assertion. (*Id.*)

[4] 15 U.S.C. § 1692 et seq.

2

Mr. Blais threatened to initiate a lawsuit against Harmon and its attorneys. (*Id.* at ¶¶ 39-41.) On November 4, 2010, Harmon "put on hold" the scheduled foreclosure sale. (*Id.* at ¶ 42.)

Subsequently, Homeward began to communicate with Ms. Lister. Again, Homeward ignored Mr. Blais' requests for verification. (*Id.* ¶ 44.) Ms. Lister's most recent communication came from OCWEN, who inserted itself as the loss payee on her homeowner insurance policy. (*Id.* at ¶ 45.)

In an attempt to determine the note holder, Mr. Blais wrote to Neil Luria, the liquidating trustee of MLN. (*Id.* at ¶ 47.) Mr. Luria explained that after filing for bankruptcy, all of MLN's documents had been destroyed. (*Id.*) Plaintiffs allege that since MLN's documents were destroyed and subsequent "holders" are not able to produce the documents, then it is unlikely that the documents exist. (*Id.* at ¶ 48.)

Under threat of foreclosure, Plaintiffs filed suit, alleging three causes of action. Count I seeks "Interim Relief," in which they agree to sell the house, place the proceeds in the court registry or in escrow, and the debt to the holder of the note will be satisfied. (*Id.* at ¶¶ 52-53.) In Count II, they seek "Quieting of Title" in order to nullify the note and mortgage. (*Id.* at ¶¶ 54-55.) In Count III, they request a "Credit Reporting," where the Court would declare that Plaintiffs owe nothing to Defendants and that Defendants remove all delinquent reports from their credit. (*Id.* at ¶¶ 56-58.)

Defendants filed motions to dismiss, arguing that Plaintiffs have failed to state a claim upon which relief can be granted. (ECF Nos. 13, 32.) Defendants move to dismiss the "Interim Relief" cause of action, as it is a remedy not a cause of action; and the "Quieting of Title" and "Credit Reporting" causes of action because Plaintiffs' allegations are not sufficiently plausible.

Plaintiffs objected, asserting their complaint's factual sufficiency. (ECF Nos. 22, 34.) The matter is ripe for review on the papers.

I.  **STANDARD OF REVIEW**

On a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court "must assume the truth of all well-plead facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007). "To avoid dismissal, a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *García-Catalán v. United States*, 734 F.3d 100, 102 (1st Cir. 2013) (quoting Fed. R. Civ. P. 8(a)(2)). "At the pleading stage, the plaintiff need not demonstrate that she is likely to prevail, but her claim must suggest 'more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* at 102-03. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A complaint that states "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not suffice. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). While a complaint needs only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Therefore, a court should dismiss a case when a plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

II.  **ANALYSIS**

The Court will first address Count Two because it is the substantive cause of action in the Complaint, and a finding on that Count will be determinative of Plaintiffs' remaining Counts. In their "Quieting of Title" claim, Plaintiffs seek a "declaration that the note and mortgage, if ever

in enforceable form, are null and void *ab initio*." (ECF No. 1 at ¶ 55.) Defendants argue that Plaintiffs' complaint fails to assert any plausible facts to support their claims. Citing R.I. Gen. Laws § 34-16-4, Plaintiffs aver that Rhode Island statutory law allows a person, who has or is claiming title to real estate, to initiate a lawsuit to determine the validity of their title, to remove a cloud from the title, and to affirm or quiet title to real estate. Plaintiffs assert that they have sufficiently pled in support of this claim that the note and mortgage are not signed, and therefore, not valid (ECF No. 1 at ¶¶ 28, 29); the note and mortgage were not produced upon demand (*Id.* at ¶¶ 37-39, 47-48); and the assignment from Bank of America to Homeward Residential is not valid since there is no recorded power of attorney of the signor of the assignment. (*Id.* at ¶ 46.) Plaintiffs also challenge which entity involved has the authority to enforce the note and mortgage.

### A. The Note[5] and Mortgage are not Executed

"Rhode Island is a title-theory state, in which 'a mortgagee not only obtains a lien upon the real estate by virtue of the grant of the mortgage deed but also obtains legal title to the property subject to defeasance upon payment of the debt.'" *Bucci v. Lehman Bros. Bank, FSB*, 68 A.3d 1069, 1078 (R.I. 2013) (quoting *140 Reservoir Ave. Assoc. v. Sepe Inv., LLC*, 941 A.2d 805, 811 (R.I. 2007)). Therefore, contrary to a note, a mortgage can be challenged by a quiet title action.

Plaintiffs seek a declaration that the mortgage was invalid *ab initio* because it was not signed in accordance with R.I. Gen. Laws § 34-11-1. (ECF No. 1 at ¶ 55.) R.I. Gen. Laws § 34-

---

[5] Plaintiffs argue that Ms. Lister's copy of the note is not executed, witnessed, or notarized. (ECF No. 1 at ¶ 29.) However, Plaintiffs do not allege that the *original* note was not duly executed, witnessed, or notarized. Furthermore, this allegation, and any inferences drawn therefrom, would not entitle the Plaintiffs to relief because the original mortgage, which is duly signed and executed, references a valid note. (ECF No. 14-1),

11-1 provides that a mortgage "shall be void unless made in writing, duly signed, acknowledged as hereinafter provided, delivered, and recorded in the records of land evidence in the town or city where the lands, tenements or hereditaments are situated." Simply, a valid mortgage must be signed, acknowledged, and recorded. Here, the complaint alleges the mortgage's existence and its recording in the land evidence record. (ECF No. 1 at ¶ 46.) Therefore, Plaintiffs must show that the mortgage was not "duly signed, [and] acknowledged"[6] to succeed on their claim.

In fact, Plaintiffs' complaint accepts the mortgage's validity. Plaintiffs acknowledge that Ms. Lister closed on a mortgage on October 27, 2006, made payments pursuant to a note attached to the mortgage, and the executed mortgage is recorded in the land evidence records. (ECF No. 1 at ¶¶ 26, 30, 46.) By and through that conduct, therefore, Plaintiffs have validated the mortgage. Significantly, based on the Court's review of the mortgage document, it is signed by Ms. Lister, witnessed and notarized (i.e. "acknowledged"), satisfying the remaining requirements of R.I. Gen. Laws § 34-11-1. Therefore, the mortgage is valid.[7] As such, Plaintiffs

---

[6] "Acknowledged" is defined in R.I. Gen. Laws § 34-12-1 as:
> Acknowledgment of any instrument hereafter made need not be in any set form, but shall be made by all the parties executing the instrument and the certificate thereof shall express the ideas that the parties were each and all known to the magistrate taking the acknowledgment, and known by the magistrate to be the parties executing the instrument, and that they acknowledge the instrument to be their free act and deed[.]

A notarized document is "acknowledged." *See Duffy v. Dwyer*, 847 A.2d 266, 270 (R.I. 2004) (holding a document is "acknowledged" when a person comes before a notary and signs the document); *see also In re Barnacle*, 623 A.2d 445, 448 (R.I. 1993).

[7] Generally, under a motion to dismiss pursuant to Fed. R. Civ. P. Rule 12(b)(6), the court may only examine facts and documents that accompany the complaint. However, "'[w]hen ... a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).'" *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008) (quoting *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 16–17 (1st Cir. 1998)). Plaintiffs' complaint extensively references the mortgage and its authenticity is unchallenged; therefore, the mortgage

have failed to allege sufficient facts that the mortgage was not properly executed on which relief can be granted and therefore their first argument under Count I is rejected.

### B. Production of the Note[8] and Mortgage

Plaintiffs contend that Defendants cannot enforce the note because they cannot produce it. Plaintiffs' argument fails because it is not supported by Rhode Island law.

First, Plaintiffs' legal argument rests upon the holding in *Cuddy v. Sarandrea*, 161 A. 297, 299 (R.I. 1932) ("The person demanding payment of a bill or promissory note must have possession of it at the time and produce or offer to produce it if requested or the demand will be ineffectual") (ECF No. 22 at 7.) However, the opinion in *Cuddy* predates the 2000 adoption of Article 3 of the UCC, and therefore, the holding in *Cuddy* was superseded by Rhode Island's adoption of the UCC. *See* R.I. Public Laws 2000, ch. 421, § 3, codified in R.I. Gen. Laws § 6A, Chapter 3.

Looking at the UCC, R.I. Gen. Laws § 6A-3-301, titled "Person entitled to enforce instrument," states that persons who are entitled to enforce an instrument (in this case the note) are "(i) the holder of the instrument; (ii) a nonholder in possession of the instrument who has the rights of a holder; (iii) or a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 6A-3-309 or 6A-3-418(d)." Most notably, section 6A-3-309 states that a lost or destroyed note is not dispositive of the note's validity or a person's right to enforce it. Additionally, section 6A-3-301 provides that "[a] person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in

---

is incorporated into the complaint and does not change this Court's review under the standard of a motion to dismiss.
[8] A note is a negotiable instrument governed by Article Three of the Uniform Commercial Code ("UCC") and therefore an action to quiet title pursuant to R.I. Gen Laws § 34-16-4 is an improper avenue to challenge its validity.

wrongful possession of the instrument." While mere possession of the note may entitle that person to enforce the terms and conditions contained within the note, a note owner may enforce its provisions even if it is not in possession of the note due to loss or destruction. *Id.*

Additionally, Rhode Island law does not require the note to be produced for it to be enforced so the assertion that Defendants have failed to produce the note provides no firm ground on which Plaintiffs could base a claim for relief. *See* R.I. Gen. Laws § 6A-3-301. Finally, Plaintiffs' bald assertion that the note likely does not exist is conclusory, and, therefore, the Court will not consider this in the complaint's factual sufficiency. *Twombly*, 550 U.S. at 555. Assuming all facts as true, Plaintiffs cannot invalidate a note under a quiet title action and Plaintiffs fail to allege sufficient plausible facts to invalidate the note under R.I. Gen. Laws § 6A, Chapter 3; therefore, Plaintiffs are not entitled to relief with regard to the note based on the factual allegations and legal assertions of their complaint.

### C.    Assignment of the Mortgage

Plaintiffs seek to void the mortgage by challenging the assignment from Bank of America to Homeward. Defendants argue that Plaintiffs lack standing to challenge the validity of the assignment. The Rhode Island Supreme Court has held "that homeowners in Rhode Island have standing to challenge the assignment of mortgages on their homes to the extent necessary to contest the foreclosing entity's authority to foreclose," *Mruk v. Mortg. Elec. Registration Sys., Inc.*, 82 A.3d 527, 536 (R.I. 2013), but "'[a] mortgagor does not have standing to challenge shortcomings in an assignment that render it merely voidable at the election of one party but otherwise effective to pass legal title.'" *Id.* (quoting *Culhane v. Aurora Loan Servs. of Neb.*, 708 F.3d 282, 291 (1st Cir. 2013)). Therefore, in light of these decisions "a trial court confronted with the standing issue in this type of case must conduct an inquiry to determine whether a

plaintiff's allegations are that a mortgage assignment was void, or merely voidable." *Wilson v. HSBC Mortg. Servs., Inc.*, --- F.3d ---, No. 13-1298, 2014 WL 563457, at *5 (1st Cir. Feb. 14, 2014).

The *Wilson* court clearly defined what is "void" or "voidable" under Massachusetts law.[9] "'Void' contracts or agreements are 'those . . . that are of no effect whatsoever; such as are a mere nullity, and incapable of confirmation or ratification.'" *Id.* at *6 (quoting *Allis v. Billings*, 47 Mass. 415, 417 (1843)). In the "mortgage context, a void mortgage assignment is one in which the putative assignor 'never properly held the mortgage and, thus, had no interest to assign.'" *Id.* (citing *Culhane*, 708 F.3d at 291.) Conversely, "'voidable' refers to a contract or agreement that is 'injurious to the rights of one party, which he may avoid at his election.'" *Wilson*, 2014 WL 563457, at *6 (quoting *Ball v. Gilbert*, 53 Mass. 397, 404 (1847)). The Rhode Island Supreme Court has held that this distinction is dispositive of a question of standing. *See Mruk*, 82 A.3d at 536. If a Plaintiff challenges the assignment as void, they have standing to pursue their claim. *See id.* at 537.

The First Circuit further developed the void and voidable distinction, stating, "[a] homeowner . . . has standing to challenge that assignment as void because success on the merits would prove the purported assignee is not, in fact, the mortgagee and therefore lacks any right to foreclose on the mortgage." *Wilson*, 2014 WL 563457, at *5. However,

> [t]hat same homeowner, though, lacks standing to claim the assignment is voidable because the assignee still would have received legal title vis-à-vis the homeowner. Thus, even successfully proving that the assignment was voidable would not affect the rights as between those two parties or provide the homeowner with a defense to the foreclosure action.

---

[9] In *Cosajay v. Mortg. Elec. Registration Sys., Inc.*, C.A. 10-442-M, 2013 WL 5912569, *4 n.2 (D.R.I. Nov. 5, 2013), this Court noted the similarities between Massachusetts and Rhode Island mortgage law. They are very similar and lack any distinguishing features from one another as to any matter relevant to the Court's determination of this issue.

*Id.* at *5. The *Wilson* court construed the precedent of *Culhane* and *Woods v. Wells Fargo Bank, N.A.*, 733 F.3d 349 (1st Cir. 2013), whose plaintiffs established standing because, in those cases, "the foreclosing entity had no right to foreclose, as it had never become the mortgage holder in the first place." *Wilson*, 2014 WL 563457, at *7. The homeowners were trying to "establish that the mortgage transfer from the assignor to the assignee – who in turn attempted to foreclose – was void at the outset. Through this allegation, the plaintiffs in those cases established standing because they challenged the foreclosing entity's status as mortgagee of their property." *Id.*[10]

Here, Plaintiffs challenge the assignment in four ways, arguing that: (1) there is no recording of a merger by BAC and Bank of America; (2) a person signed the assignment with "claimed" power of attorney; (3) the power of attorney was not recorded; and (4) the signor of the assignment signed as an agent of Homeward and MERS. (ECF No. 1 at ¶ 46.) The Court will discuss each, though none of these arguments alleges a void assignment.

First, regarding the argument that the BAC and Bank of America merger was not recorded, Rhode Island law does not require a business to record a document of merger in land evidence records. Second, Plaintiffs allege that the signor of the assignment only "claimed" to have Bank of America's power of attorney. Even if the Court generously infers that there was indeed no valid power of attorney, that inference would merely make the assignment voidable, not void, and Plaintiffs would lack standing to challenge the assignment. *See Wilson*, 2014 WL 563457, at *6. Third, Rhode Island's power of attorney statute does not require a power of

---

[10] Yesterday, this Court issued a Memorandum & Order in *Clark v. Mortgage Electronic Registration Systems*, C.A. No. 12-802-M-LDA (D.R.I. filed March 27, 2014) that held that the plaintiff does not have standing under Rhode Island law to challenge this type of assignment because the allegations would merely make the assignment voidable.

10

attorney to be recorded. R.I. Gen. Laws § 34-22-6.[11] Lastly, the allegation that the signor of the assignment signed as an agent of Homeward and MERS is analogous to an allegation made and rejected in *Wilson*. *See Wilson*, 2014 WL 563457, at *7. In *Wilson*, the First Circuit was not troubled by the argument that the signor of the assignment allegedly "wore multiple hats, serving both as an employee of HSBC and an officer of MERS." *Id.* This court agrees and finds that even if the signor of the assignment was a dual agent, it does not affect the validity of the assignment. *See id.* Plaintiffs' allegations, taken as true, are insufficient to prove they are entitled to standing.

D.   **Enforcement of the Mortgage**

Despite allegations of a nonexistent note and invalid mortgage, the crux of Plaintiffs' complaint challenges which entity may enforce the mortgage, specifically if two separate entities hold the mortgage and note. (ECF No. 1 at ¶ 46.)

The case at bar is factually analogous to the Rhode Island Supreme Court opinion in *Bucci*. In *Bucci*, the plaintiff defaulted on his note, and after a failure to cure the default, MERS began foreclosure proceedings "as the mortgage holder and named mortgagee under the mortgage and as nominee for the beneficial owner of the note." *Id.*, 68 A.3d at 1074. The plaintiff filed a lawsuit, challenging MERS's power to foreclose and the trial court determined that MERS had the authority to foreclose. *Id.* at 1077. On appeal, the Rhode Island Supreme Court had to "determine whether [MERS, as] a nominee of a mortgage lender, who holds only

---

[11] R.I. Gen. Laws § 34-22-6 states:
> The donee of a power of attorney may, under and within the authority of the power, if he or she thinks fit, execute or do any assurance, instrument, or thing in and with his or her own name and signature, and, where sealing is required, with his or her own seal; and every assurance, instrument and thing so executed and done shall be as effectual in law, to all intents, as if it had been executed or done by the donee of the power in the name and with the signature, or signature and seal, of the donor thereof.

11

legal title to the mortgage, but who is not the holder of the accompanying promissory note, may exercise the statutory power of sale and foreclose on the mortgage." *Id.* at 1072. The court answered in the affirmative, finding that because MERS, as the agent of the note owner, was attempting to enforce the mortgage on the note owner's behalf, MERS could foreclose. *Id.* at 1089.

The court made several findings that supported its principle holding. First, based on language in the mortgage, the plaintiffs "explicitly granted the statutory power of sale and the right to foreclose to MERS, and consequently, MERS ha[d] the contractual authority to exercise that right." *Id.* at 1081. The language was as follows:

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any and all of those interests, including, but not limited to, the right to foreclose and sell the property * * *.

*Id.* Second, the court held that plaintiffs' argument that MERS could not foreclose because it was not an agent of the note holder failed because the MERSCORP membership rules creates "a contractual relationship [] between MERS and its members, which allows MERS to act on their behalf." *Id.* at 1083 n.12.

Third, the court held that MERS's nominee status survived a challenge based on R.I. Gen. Laws § 18-10-1, which limits companies acting in nominee capacities to trust companies or national banking associations. The court did not "construe the statute as precluding MERS from acting as a nominee simply because it authorizes other entities to do so. Therefore, [it] conclude[d] that this section ha[d] no effect on MERS's ability to act in a nominee capacity." *Bucci*, 68 A.3d at 1084. Mr. Bucci also challenged MERS's status as a mortgagee by arguing that MERS is not a true mortgagee, but a "nominee mortgagee," and therefore, it does not have

power to foreclose under R.I. Gen. Laws § 34-11-22, which limits the power to foreclose to true mortgagees. *Id.* However, the court reasoned that the "power of sale in a mortgage is derived from contract, not statute," and endorsed the trial court's determination that MERS is the designated mortgagee in the mortgage document and MERS's role as nominee for the lender and its assigns and held that "MERS's designation as nominee under the mortgage, albeit as the holder of legal title only, does not proscribe its authority to exercise the power of sale under § 34-11-22." *Id.* at 1085.

Lastly, the court held that the note and mortgage need not be held by the same entity for a valid foreclosure to take place. *Id.* at 1088-89. The court relied heavily upon the First Circuit's reasoning in *Culhane*, which held that

> 'there is no reason to doubt the legitimacy of the common arrangement whereby MERS holds bare legal title as mortgagee of record and the noteholder alone enjoys the beneficial interest in the loan. The law contemplates distinctions between the legal interest in a mortgage and the beneficial interest in the underlying debt. These are distinct interests, and they may be held by different parties. * * * Where – as at the inception of this loan – the mortgage and the note are held by separate entity, an equitable trust in implied by law. Under such an arrangement, the mortgagee is an equitable trustee who holds bare legal title to the mortgaged premises in trust for the noteholder.'

*Id.* at 1088 (quoting *Culhane*, 708 F.3d at 291-292.) The Rhode Island Supreme Court adopted the *Culhane* court's reasoning and conclusion that "MERS's role as mortgagee of record and custodian of the bare legal interest as nominee for the member-noteholder, and the member-noteholder's role as owner of the beneficial interest in the loan, fit comfortably with each other" and found that those principles "reside comfortably within the law of [Rhode Island] as well." *Id.*

Applying the law set forth in *Culhane* to its own facts, the court in *Bucci* further held that:

> The lender retained equitable title to the mortgage and passed that equitable title to each of its successors and assigns, including the current owner, the mortgage and note have never been separated . . . Instead, the note and the equitable interest in the mortgage have always remained unified, and the mortgage has 'followed the note.' Furthermore, the holder of the legal title to the mortgage – MERS – always has acted as an agent of the owner of the equitable title. In our opinion, this transactional structure is consistent with the law of this state.

*Bucci*, 68 A.3d at 1088. Therefore, "MERS, as the holder of legal title, may be denominated as the mortgagee in the mortgage and may foreclose on behalf of the note holder." *Id.*

The above holdings are dispositive of the alleged enforcement issues in Ms. Lister's complaint. The mortgage Ms. Lister signed appoints MERS as "nominee for Lender and Lender's successors and assigns." (ECF No. 14-1 at 2.) In addition to designating MERS as such, the mortgage also states "Borrower does hereby mortgage, grant and convey to MERS, (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS . . . the Statutory Power of Sale." (*Id.* at 4.) MERS was a nominee that held the Power of Sale for MLN, and MERS was an agent for each successor and assignee of the mortgage. The complaint asserts that Homeward is the current mortgage holder, and, according to the mortgage itself, MERS is a nominee for Homeward. The complaint states that foreclosure was threatened on behalf of MERS and the law allows MERS, as a nominee, to exercise its power of sale and foreclose on Homeward's behalf, and, as holder of the mortgage, Homeward could initiate foreclosure through its servicer, OCWEN Loan Servicing. (*Id.* at ¶¶ 36, 45.) Therefore, assuming the facts in the complaint as true, Plaintiffs still fail to state a claim upon which relief can be granted, because MERS and OCWEN both have the right to foreclose on Homeward's behalf under Rhode Island common and statutory law and pursuant to the mortgage.

## III. CONCLUSION

Plaintiffs' complaint alleges no facts sufficient to invalidate the note or mortgage; no facts that would void the assignment; and no facts that would entitle Plaintiffs to relief. Therefore, Defendants' Motions to Dismiss (ECF No. 13 and 32) are GRANTED.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
United States District Judge

March 28, 2014